# THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

DEBRA A. MARTIN                                                                    PLAINTIFF

v.                                          Case No. 5:17-cv-00109-KGB

GEORGE ERVIN "SONNY" PERDUE, III,
in His Official Capacity as SECRETARY OF
THE DEPARTMENT OF AGRICULTURE                                      DEFENDANT

## OPINION AND ORDER

Before the Court is a motion for summary judgment filed by defendant George Ervin "Sonny" Perdue, III, in his official capacity as Secretary of the United States Department of Agriculture ("USDA") (Dkt. No. 24). In her complaint, plaintiff Debra A. Martin alleges that the USDA subjected her to unlawful discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, and retaliated against her for having opposed allegedly discriminatory practices (Dkt. No. 3). Secretary Perdue moves for summary judgment on each of these claims. Ms. Martin responded to the motion, and Secretary Perdue filed a reply (Dkt. Nos. 29, 32). For the following reasons, the Court grants Secretary Perdue's motion for summary judgment.

## I.      Background

Secretary Perdue filed a statement of undisputed facts (Dkt. No. 25). Ms. Martin filed a response to Secretary Perdue's statement of undisputed facts (Dkt. No. 30). Unless otherwise noted, the following facts are taken from Secretary Perdue's statement of undisputed facts.

Ms. Martin has been a program technician in the Arkansas County, Arkansas, office of the USDA's Farm Service Agency ("FSA") since January 1983 (Dkt. No. 25, ¶ 1). In May 2013, Ms. Martin applied to become a County Office Trainee ("COT") in the FSA (*Id.*, ¶ 2). There were two

vacant positions posted at that time (*Id.*). A key requirement for the COT position is a high school education (*Id.*, ¶ 3). According to the vacancy announcement, a candidate's education, experience, or a combination of education or experience would be taken into account (*Id.*). Once the applications for the positions were submitted, they were reviewed and ranked for qualified candidates to be chosen for interviews (*Id.*, ¶ 4). Ms. Martin and six other applicants' applications were reviewed (*Id.*, ¶ 5). Ms. Martin is an African-American woman (*Id.*). The other applicants for the COT positions, including Rebecca Davis and Shannon Choate, are Caucasian (*Id.*).

There were five people rating the applications: Linda Newkirk, Tonya Washington, Sharon Shireman, Larry Segars, and Barbara Pettigrew (*Id.*, ¶ 6). Ms. Washington is African-American, and the other raters are Caucasian (*Id.*). Ms. Washington was Ms. Martin's second-line supervisor (*Id.*, ¶ 7). Ms. Newkirk, who was the State Executive Director, has never been one of Ms. Martin's supervisors (*Id.*). Ms. Washington gave Ms. Martin's application a rating of 14 (*Id.*, ¶ 8). Ms. Washington rated another applicant, Rebecca Davis, at 15 (*Id.*). Ms. Washington rated another applicant, Ms. Choate, at 20 (*Id.*). Mr. Segars gave Ms. Martin a rating of 17 (*Id.*, ¶ 9). He also rated Ms. Davis at 15 and Ms. Choate at 22 (*Id.*). Ms. Newkirk gave Ms. Martin a rating of 18, which was the highest score any application reviewer gave Ms. Martin (*Id.*, ¶ 10). Ms. Newkirk rated Ms. Davis at 21 and Ms. Choate at 20 (*Id.*).

After the applications were scored, six applicants were referred for interviews, including Ms. Martin, Ms. Davis, and Ms. Choate (*Id.*, ¶ 11). Ms. Martin and the other candidates were interviewed on July 18, 2013 (*Id.*, ¶ 12). The interviews were conducted by the Arkansas FSA Committee, which included five people (*Id.*, ¶ 13). The Arkansas FSA Committee members are appointed by the President of the United States (*Id.*, ¶ 14). Among other things, they conduct interviews and select COTs for the FSA in Arkansas (*Id.*). The FSA Committee members

conducting the interviews for the COT vacancies in July 2013 were Theodore Eldridge, Mike Freeze, Eric Anderson, Johnny Loftin, and Richard Simmons (*Id.*, ¶ 15). Mr. Eldridge, the chairman of the FSA Committee, is African-American, and the other members are Caucasian (*Id.*).

According to Miriam Morehead, who was the Human Resources Representative and State Civil Rights Coordinator for the USDA FSA, she was responsible for providing interview questions for the FSA Committee to use (*Id.*, ¶ 16; Dkt. No. 31-2, at 2). The FSA Committee scored each candidate's answers by giving one point for a "low" answer, two points for a "medium" answer, and three points for a "high" answer (Dkt. No. 25, ¶ 17). When the interview scores were tallied, Ms. Choate had the highest score with 95, Ms. Davis had a score of 82, and Ms. Martin had a score of 71 (*Id.*, ¶ 18). Ms. Choate and Ms. Davis were selected for the two COT vacancies (*Id.*, ¶ 19). Ms. Choate and Ms. Davis met the key requirements for the COT position (*Id.*, ¶ 20).

Ms. Choate currently works as a County Executive Director ("CED") for FSA in Yell and Pope County, Arkansas (Dkt. No. 25-3, at 3). When Ms. Choate applied for the COT position, she had 25 years' experience as a program technician (Dkt. No. 25, ¶ 21). In her deposition, Ms. Choate testified that, as a program technician in the Franklin and Johnson County, Arkansas, office, she served as acting CED two to three days a week when the CED worked in another office (Dkt. No. 25-3, at 6). There were four people, including Ms. Choate, who worked in the Franklin County, Arkansas, office: Steve Atkinson, the CED; Marcia Schluterman, program technician; Phyllis Schultz, program technician; and Ms. Choate, program technician (*Id.*, at 3–4). Ms. Chaote had more years of experience than both Ms. Schultz and Ms. Schluterman (*Id.*, at 4). When Mr. Atkinson was out of the office, Ms. Choate would serve as the acting CED (*Id.*). Ms. Choate

received a superior performance rating as a program technician in 2011–2012, which is the second-highest performance level rating (Dkt. No. 25, ¶ 23).

When she applied for the COT position, Ms. Davis had worked for the FSA for 27 years, from 1986 until 2013 (*Id.*, ¶ 24).  Ms. Davis worked as acting CED from June 2009 through August 2009, when she was chief program technician in the Randolph County, Arkansas, office (*Id.*, ¶ 25).  Ms. Davis also assisted with training for other FSA employees in Arkansas (*Id.*, ¶ 26).  Ms. Davis received an outstanding performance rating as a program technician in 2011–2012, which is the highest performance level rating (*Id.*, ¶ 27).  Ms. Davis attended a national training for the Farm Bill, and she assisted in training for the State of Arkansas as well (Dkt. No. 25-4, at 7).  Ms. Davis has a high school diploma, and she has 30 hours of college but has not obtained an undergraduate degree (*Id.*, at 4).

When she applied for the COT position in 2013, Ms. Martin had a bachelor's degree in Business Administration and 30 years of experience as a program technician in Arkansas County (Dkt. No. 25, ¶ 28).  At the time she applied, Ms. Martin did not have any experience working as an acting CED (*Id.*, ¶ 29).  Ms. Martin also did not have any experience training other employees (*Id.*, ¶ 30).  Ms. Martin received a superior performance rating as a program technician in 2011–2012, which is the second-highest performance level rating (*Id.*, ¶ 31).

Ms. Newkirk became the State Executive Director of the FSA in August 2009 (*Id.*, ¶ 32).  Ms. Martin filed an Equal Employment Opportunity ("EEO") administrative claim in 2007, which was before Ms. Newkirk was the State Executive Director, and Ms. Newkirk was not involved in that claim (*Id.*, ¶ 33).  Ms. Martin filed a second EEO claim in December 2011, naming Ms. Newkirk as the alleged discriminating official; Ms. Newkirk was then State Executive Director

(*Id.*, ¶ 34).  Ms. Martin's EEO claim in December 2011 was based on the fact that she was not qualified to interview for a Farm Loan Officer position earlier that year (*Id.*, ¶ 35).

## II.    Standard Of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *See Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.  *See Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).  "However, parties opposing summary judgment motions may not rest upon the allegations in their pleadings."  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984)

 "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial."  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)

(quoting *Fercello v. City of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)).  Accordingly, this Court applies the same summary-judgment standard to discrimination cases as it does to all others.

### III.    Title VII Race Discrimination Claims

Ms. Martin brings a claim of race discrimination in violation of Title VII.  Specifically, Ms. Martin asserts that the USDA failed to promote her in July 2013 to one of the open COT positions because of her race and that she was retaliated against in July 2013 because of her race. Ms. Martin can establish a *prima facie* case of discrimination either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).  *See Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012) (citing *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 855 (8th Cir. 2012)).  Direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action.  *Torgerson*, 643 F.3d at 1043–44 (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)).  A plaintiff with strong direct evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, irrespective of whether his strong evidence is circumstantial.  *See id.*  However, "if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext."  *Id.* (quoting *Griffith*, 387 F.3d at 736).

### A.    Direct Evidence Analysis

"To be entitled to direct evidence analysis, the plaintiff must present 'evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision.'" *Rivers-Frison v. Se. Mo. Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998) (quoting *Radabaugh v. Zip Food Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993)). Ms. Martin presents no direct evidence of discrimination in support of any of her claims. Accordingly, the Court will proceed through the *McDonnell Douglas* analysis.

### B.    *McDonnell Douglas* Analysis

Under the *McDonnell Douglas* analysis, "the plaintiff bears the burden of establishing a *prima facie* case of discrimination." *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)). If a plaintiff makes out a *prima facie* case, she creates a presumption of unlawful discrimination, and the burden shifts to the defendant to come forward with evidence of a legitimate, nondiscriminatory reason for its actions. *See id.* (citing *Burdine*, 450 U.S. at 253). If the defendant articulates such a reason, the burden returns to the plaintiff to show that the defendant's proffered reason is pretextual and that unlawful discrimination was the true reason for the adverse employment action. *See Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 990 (8th Cir. 2011) (citing *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860–61 (8th Cir. 2009)). Pretext may be demonstrated by different means. *See*, *e.g.*, *Roxas v. Presentation Coll.*, 90 F.3d 310, 316 (8th Cir. 1996).

Ms. Martin alleges race discrimination based on the USDA's alleged failure to promote her to the COT position in July 2013 and retaliation against her for filing previous EEO

7

administrative claims. The Court examines each of these claims by applying the *McDonnell Douglas* analysis.

### 1. Failure To Promote

Ms. Martin alleges a failure-to-promote claim by asserting that the USDA denied her the COT position in July 2013. Specific to Ms. Martin's failure-to-promote claim, to establish a *prima facie* case of race discrimination, Ms. Martin must show that: (1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of her protected group, were promoted instead. *See Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011). The threshold of proof necessary to make a *prima facie* case is minimal. *See Johnson v. Ark. State Police*, 10 F.3d 547, 551 (8th Cir. 1993) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)).

### a. *Prima Facie* Case

Ms. Martin presents record evidence establishing all four prongs of her *prima facie* case. Secretary Perdue concedes that Ms. Martin can establish a *prima facie* case of discrimination for failure to promote (Dkt. No. 26, at 7). For these reasons, the Court determines that Ms. Martin establishes a *prima facie* claim for failure to promote.

### b. Legitimate, Nondiscriminatory Reason

Because Ms. Martin has established a *prima facie* case of failure to promote, Secretary Perdue must meet his burden of articulating a legitimate, nondiscriminatory reason for not hiring Ms. Martin. *See Torgerson*, 643 F.3d at 1046 (quoting *Dixon v. Pulaski Cty. Special Sch. Dist.*, 578 F.3d 862, 868 (8th Cir. 2009)). The USDA has "the burden to articulate a non-discriminatory, legitimate justification for its conduct, which rebuts the employee's prima facie case. This burden

is not onerous . . . ." *Bone*, 686 F.3d at 954 (8th Cir. 2012) (citation and internal quotation marks omitted).

Secretary Perdue contends that the FSA Committee selected the two candidates who scored highest after the interview process: Ms. Choate and Ms. Davis. Secretary Perdue further asserts that, because the FSA Committee determined that Ms. Choate and Ms. Davis were the most qualified candidates based on their interviews, he has met his burden of articulating a legitimate, nondiscriminatory reason for not promoting Ms. Martin.

Here, the FSA Committee scored each candidate's answers by giving one point for a "low" answer, two points for a "medium" answer, and three points for a "high" answer (Dkt. No. 25, ¶ 17). When the interview scores were tallied, Ms. Choate had the highest score with 95, Ms. Davis had the second highest score with 82, and Ms. Martin had the third highest score with 71 (*Id.*, ¶ 18). Ms. Choate and Ms. Davis were selected for the two COT vacancies, and both met the key requirements for the COT position. Secretary Perdue produces a legitimate, nondiscriminatory reason for the USDA's actions. Because Ms. Martin did not have one of the two highest interview scores, and the FSA Committee promoted the applicants with the two highest scores after the interviews, the FSA Committee had a legitimate, nondiscriminatory reason not to promote Ms. Martin to the COT position in 2013.

### c.      Pretext For Discrimination

Because Secretary Perdue has articulated a legitimate, nondiscriminatory reason, the burden now shifts to Ms. Martin to prove that the USDA's failure to promote her was pretextual. "There are at least two ways a plaintiff may demonstrate a material question of fact regarding pretext." *Torgerson*, 643 F.3d at 1047 (citing *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006)). First, "[a] plaintiff may show that the employer's explanation is unworthy

of credence because it has no basis in fact. Alternatively, a plaintiff may show pretext by persuading the court that a prohibited reason more likely motivated the employer." *Id.* (alterations, citations, and internal quotation marks omitted). In this sense, Ms. Martin's burden of establishing pretext "merges with the ultimate burden of persuading the court that [she was] the victim of intentional discrimination." *Id.* at 1046 (quoting *Burdine*, 450 U.S. at 256).

Ms. Martin makes several arguments in support of her claim that Secretary Perdue's failure to promote her was pretextual. First, Ms. Martin argues that she was the most qualified applicant and that the interview process was designed to prevent Ms. Martin from being selected for the position. Specifically, Ms. Martin contends that the interview questions were subjective in nature. She further asserts that Ms. Newkirk did not want Ms. Martin to be selected for the position and that Ms. Newkirk recommended that the FSA Committee select Ms. Davis. Ms. Martin also contends that the Caucasian members of the FSA Committee discriminated against her because they consistently gave her lower scores compared to Ms. Choate and Ms. Davis. Finally, Ms. Martin argues that the USDA FSA in Arkansas consistently hires Caucasian applicants for COT and CED positions, even when African-American applicants are more qualified for the positions.

In the context of her claim for failure to promote, "to support a finding of pretext, [Ms. Martin] must show that [Secretary Perdue] hired a *less* qualified applicant." *Kincaid v. City of Omaha*, 378 F.3d 799, 805 (8th Cir. 2004). "Although [an employee] does possess the experience and some of the other qualities essential for success in the position, this does not suffice to raise an inference that [an employer's] stated rationale for giving the position to another is pretextual." *Lidge-Myrtil v. Deere & Co.*, 49 F.3d 1308, 1311 (8th Cir. 1995). "[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers,

except to the extent that those judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995). The employer, not the Court or employees, decides what qualifications constitute the best-qualified applicant. *See Cox v. First Nat'l Bank*, 792 F.3d 936, 939 (8th Cir. 2015); *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 960 (8th Cir. 1995). "If the comparison 'reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate,' then no inference of . . . discrimination would arise." *Torgerson*, 643 F.3d at 1049 (alteration in original) (quoting *Wingate v. Gage Cty. Sch. Dist.*, 528 F.3d 1074, 1080 (8th Cir. 2008)). "'Similar qualifications' do 'not raise an inference of . . . discrimination.'" *Id.* (alteration in original) (quoting *Chock v. Nw. Airlines, Inc.*, 113 F.3d 861, 864 (8th Cir. 1997)).

With respect to the interview process, before the applicants were interviewed, a panel of five people, including one African-American and four Caucasians, reviewed all applications for the open COT positions and ranked the applications (Dkt. No. 25, ¶¶ 4, 6). The application-review panel referred six applicants for interviews, including Ms. Martin, Ms. Davis, and Ms. Choate (*Id.*, ¶ 11). Ms. Morehead was responsible for providing interview questions for the FSA Committee to use during the interview for the open COT positions in 2013 (*Id.*, ¶ 16). The FSA Committee was comprised of five members: Mr. Eldridge, the chairman, is African-American, and the other four members of the committee are Caucasian (*Id.*, ¶ 15). Ms. Morehead and Ms. Newkirk also sat in on the interviews for the open positions (Dkt. No. 31-2, at 18).

According to her deposition testimony, Ms. Morehead agreed that the interview questions were "pretty subjective in nature" and that "the score that the interviewer gives is really based on how they perceive the person's answer." (*Id.*, at 30). Ms. Morehead also stated that the interviewers had "the interview record and the other sheets that they would have to formally

11

complete when we finished" the interviews, but "[t]he interviewers did not have copies of . . . the individual application." (*Id.*, at 27, 28). In other words, the written applications were scored separately.

According to her deposition, before the interviews began, Ms. Morehead talked "to the interview panel and ask[ed] that they think about the importance of having a diverse pool and the fact that [the FSA] didn't have a lot of diversity within [the] COT program . . . ." (*Id.*, at 22). Ms. Morehead also told the interview panel at that time "that there was a need to have more [diversity] so that we could just have a better office staff, a better overall group of employees." (*Id.*).

The FSA Committee scored each candidate's answers by giving one point for a "low" answer, two points for a "medium" answer, and three points for a "high" answer (Dkt. No. 25, ¶ 17). When the interview scores were tallied, Ms. Choate had the highest score with 95, Ms. Davis had the second highest score with 82, and Ms. Martin had the third highest score with 71 (*Id.*, ¶ 18). Ms. Choate and Ms. Davis were selected for the two COT vacancies, and both met the key requirements for the COT position (*Id.*, ¶¶ 19–20).

According to Ms. Morehead, "Shannon Choate was selected on her interview score. Rebecca Davis was selected based on a three-to-two vote from the panel to select Rebecca Davis." (Dkt. No. 31-2, at 36). Ms. Morehead also agreed that the FSA Committee voted to promote Ms. Choate and Ms. Davis "after Ms. Newkirk spoke on behalf of Ms. Davis." (*Id.*).

### *i.* Qualifications Of The Applicants

Ms. Martin first argues that she was the most qualified for the COT position. Specifically, Ms. Martin argues that she had a higher level of education and more years of experience compared to Ms. Choate and Ms. Davis. According to the record, a key requirement for the open COT

positions was a high school diploma. In addition, a candidate's education, experience, or a combination of education or experience would be taken into account.

When she applied for the COT position in 2013, Ms. Martin had a bachelor's degree in Business Administration and 30 years of experience as a program technician in Arkansas County (Dkt. No. 25, ¶ 28). She received a superior performance rating as a program technician in 2011–2012, which is the second-highest performance level rating (*Id.*, ¶ 31). She does not have any experience working as an acting CED or training other employees (*Id.*, ¶¶ 29–30).

When Ms. Choate applied for the COT position, she had a high school diploma and 25 years of experience as a program technician (*Id.*, ¶ 21). Ms. Choate received a superior performance rating as a program technician in 2011–12, which is the second-highest performance level rating (*Id.*, ¶ 23). As a program technician in the Franklin and Johnson County office, Ms. Choate served as acting CED two to three days a week when the CED worked in another office because she had more years of experience compared to the other three people in that office (Dkt. No. 25-3, at 3–4, 6).

When Ms. Davis applied for the COT position, she had a high school diploma, as well as 30 hours toward a bachelor's degree, and 27 years of experience working for the FSA (Dkt. Nos. 25, ¶ 24; 25-4, at 4). Ms. Davis received an outstanding performance rating as a program technician in 2011–2012, which is the highest performance level rating (Dkt. No. 25, ¶ 27). She worked as acting CED from June 2009 through August 2009, when she was chief program technician in the Randolph County office (*Id.*, ¶ 25). Ms. Davis attended a national training for the Farm Bill and assisted with training for other FSA employees in Arkansas (Dkt. No. 25-4, at 7).

Viewing the evidence in the light most favorable to Ms. Martin, as the Court is required to do, she fails to show pretext based on a claim that the FSA Committee promoted a less-qualified applicant. Ms. Martin had a higher level of education compared to Ms. Choate and Ms. Davis, but both Ms. Choate and Ms. Davis had high school diplomas at the time, as required for the position. Ms. Martin also had more years of experience with the FSA, but she only had five years more experience compared to Ms. Choate and three years more experience compared to Ms. Davis. In terms of the performance ratings for the year before the COT position was posted, Ms. Davis received the highest performance level, while Ms. Martin and Ms. Choate both received the second-highest performance level. Ms. Choate had experience as an acting CED for a few days a week because she had the most years of experience in her office. Similarly, Ms. Davis had experience as an acting CED for a short period of time, in addition to attending a national training and training FSA employees in Arkansas. Given the basic requirements for the COT position, Ms. Choate, Ms. Davis, and Ms. Martin had similar qualifications, and Ms. Martin has not shown any evidence of discrimination on this basis.

Ms. Martin further asserts that the experience Ms. Choate had as an acting CED was in a small office where she just happened to have the most experience. According to Ms. Choate's deposition, there were four people, including herself, who worked in the Franklin County office, and she had more years of experience compared to the other two program technicians (Dkt. No. 25-3, at 3–4). Because she had more experience than the other program technicians, when the CED was out of the office, Ms. Choate served as the acting CED (*Id.*). The fact that Ms. Choate's experience as acting CED was at a smaller office is not evidence of intentional discrimination on the part of the USDA with respect to the decision not to promote Ms. Martin.

This Court does not sit as a super-personnel department reviewing the wisdom or fairness of the business judgments made by the USDA, unless those judgments involve intentional discrimination.  *See Hutson*, 63 F.3d at 781.  Because the evidence Ms. Martin has presented shows that she was only similarly qualified or not as qualified as Ms. Choate and Ms. Davis, without any evidence of intentional discrimination, Ms. Martin has failed to meet her burden and to show pretext with regard to the USDA hiring a less-qualified applicant.

### *ii.*     **Subjective Interview Process**

Ms. Martin next offers as evidence of pretext that the interview process used by the USDA was subjective (Dkt. No. 31-5, at 2).  Ms. Martin specifically cites to three of the seven questions on the interview record as "clearly subjective in nature":  (1) "Tell us something about yourself and work experience"; (2) "Why did you apply for the County Operations Trainee program?"; and (3) "Tell us about your ability to analyze data and reach conclusions."  (*Id.*).

The Eighth Circuit has held that "[a]n employer's asserted reliance on subjective factors . . . particularly is to be closely scrutinized for discriminatory abuse."  *O'Conner v. Peru State Coll.*, 781 F.2d 632, 637–38 (8th Cir. 1982).  "When the evaluation is in any degree subjective and when the evaluators themselves are not members of the protected minority, the legitimacy and undiscriminatory basis of the articulated reason for the decision should be subject to particularly close scrutiny . . . ."  *Coble v. Hot Springs Sch. Dist. No. 6*, 682 F.2d 721, 726–27 (8th Cir. 1982) (quoting *Royal v. Mo. Highway & Transp. Comm'n*, 655 F.2d 159, 164 (8th Cir. 1981)).  However, "[b]y nature, most interviewing involves a degree of subjectivity and judgment which is important to the selection process."  *Mustafa v. State of Neb. Dep't of Corr. Servs.*, 196 F. Supp. 2d 945, 952 (D. Neb. 2002).

First, it is not clear that particularly close scrutiny is required in this case because several of those in charge and involved in the selection process were members of the protected minority. *See Coble*, 682 F.2d at 727–28 (ruling that particularly close scrutiny is only required where "the evaluation is in any degree subjective *and when the evaluators themselves are not members of the protected minority*" (emphasis added)). One of the FSA Committee members who conducted interviews, Mr. Eldridge, was the chairman of the FSA Committee and is African-American. His scores of Ms. Martin's answers were aggregated with the other committee members to rank Ms. Martin's interview performance. Further, Ms. Morehead, who is African-American, told the FSA Committee about the need for diversity at the COT position, reviewed and finalized the interview questions, and sat in on each interview to ensure proper procedure was followed.

Even applying close scrutiny and viewing all facts in favor of Ms. Martin, the Court determines that record evidence is lacking to demonstrate that the selection process used by the USDA was not legitimate or was discriminatory. Ms. Morehead, the Human Resources Representative and State Civil Rights Coordinator for the USDA FSA, was responsible for providing interview questions to the FSA Committee to use. Applicants for the open COT positions in 2013 submitted their applications to a review panel who rated and ranked the applications. The review panel chose six applicants to go through the interview process. The FSA Committee conducted the interviews and selected two applicants for the open positions. In addition to the FSA Committee, Ms. Morehead and Ms. Newkirk also sat in on the interview to ensure proper procedures were followed. The FSA Committee members rated the applicants on each question and combined their scores to create a final score for the applicants. Of the six applicants, the FSA Committee selected the top two applicants based on scores for the open positions. District courts facing similar facts have granted summary judgment. *See Childs v.*

*Omaha Pub. Power Dist.*, No. 8:06CV546, 2007 WL 3342716 (D. Neb. Nov. 6, 2007) (granting summary judgment where applicants were interviewed by an interview panel and the applicant with the highest score was hired); *Rice v. Snow*, No. 04-0279-CV-W-REL, 2006 WL 931922 (W.D. Mo. Apr. 11, 2006) (granting summary judgment because plaintiff could not show pretext where IRS selected the applicant based on interview scores); *Grant v. City of Cedar Rapids*, No. C98-4MJM, 2000 WL 34030832 (N.D. Iowa Dec. 1, 2000) (granting summary judgment because plaintiff could not show pretext where her interview did not score among the top applicants).

Further, even though Ms. Martin argues that the interview questions were subjective, the interview questions that she cites in support of her claim addressed background information, why the applicant was seeking the position, and the ability of the applicant to analyze data. Ms. Martin has not shown through record evidence that the subjective nature of these questions specifically allowed the FSA Committee to hire two Caucasian candidates. Despite all of the procedures followed by the USDA to ensure a fair application process, interviews are inherently subjective and require a degree of judgment on the part of the interview panel. *See Mustafa*, 196 F. Supp. 2d at 952.

Ms. Martin also offers as evidence of pretext that three of the four Caucasian interviewers consistently gave Ms. Martin lower scores compared to Ms. Choate and Ms. Davis. In her second amended complaint and response, Ms. Martin presents the following table of the interview scores assigned by the FSA Committee comprised of Mr. Eldridge, Mr. Anderson, Mr. Freeze, Mr. Loftin, and Mr. Simmons to the three interviewees for the COT position in 2013:

|  | Eldridge | Anderson | Freeze | Loftin | Simmons |
|---|---|---|---|---|---|
| Shannon Choate | 16 | 20 | 20 | 20 | 19 |
| Rebecca Davis | 15 | 18 | 13 | 17 | 19 |

| Debra Martin | 20 | 9 | 11 | 18 | 13 |

(Dkt. Nos. 3, ¶ 41; 31, at 9).[1] Specifically, Ms. Martin argues that Mr. Anderson, Mr. Freeze, and Mr. Simmons, who are all Caucasian, consistently gave Ms. Martin lower scores than the two Caucasian applicants because they "did not want Ms. Martin to get the position . . . ." (Dkt. No. 31, at 19).

Viewing all record evidence in the light most favorable to Ms. Martin, as the Court is required to do, the evidence does not establish a genuine issue of material fact on whether the USDA's failure to promote Ms. Martin was pretextual and instead based on intentional race discrimination when three of the Caucasian interviewers consistently rated Ms. Martin lower compared to the other applicants. First, the fact that three of the four Caucasian interviewers scored Ms. Martin lower than the other two applicants alone does not meet Ms. Martin's burden to show the reason she was not promoted was pretextual and instead based on race. Ms. Martin has not presented any additional evidence to show that Mr. Anderson, Mr. Freeze, and Mr. Simmons' actions were based on race. Ms. Martin has only submitted the interview record sheet from Mr. Eldridge, where he gave Ms. Martin a score of 20. Without the interview record sheets from the other interviewers, the Court cannot compare the interview evaluation sheets of the different interviewers, and Ms. Martin has not presented any additional evidence in support of her argument.

---

[1] Ms. Martin does not include the copies of the interview record sheets for the July 2013 COT interviews with her second amended complaint or response to the motion for summary judgment, except for Mr. Eldridge's interview record sheet for Ms. Martin, indicating that he gave her 20 points (Dkt. No. 31-5, at 2–3). Secretary Perdue does not dispute the authenticity of the interview scores asserted by Ms. Martin. Based on the deposition testimony of Ms. Morehead, it appears that counsel for Secretary Perdue checked and agreed with the scores given by Ms. Martin in the above chart (Dkt. No. 31-2, at 33–34). For these reasons, the Court accepts the interview scores cited by Ms. Martin as true for purposes of this analysis.

The evidence shows that the FSA Committee interview scores were based on the candidate's performance in the interviews, and there is no evidence that any candidate's score was based on her race. *See McKay v. U.S. Dep't Transp.*, 340 F.3d 695, 700 (8th Cir. 2003) (upholding summary judgment where the hiring decision was made based on the candidate with the best interview); *Gentry v. Georgia-Pacific Corp.*, 250 F.3d 646, 650–51 (8th Cir. 2001) (finding no evidence of discrimination in the promotion selection process when the successful candidate graded higher on scored interview process). For these reasons, the Court finds that Ms. Martin has failed to show a genuine issue of material fact regarding pretext based on her allegations of a subjective interview process.

### *iii*.    **Preselection**

Ms. Martin also offers as evidence of pretext a claim that Ms. Newkirk preselected Ms. Davis for one of the open COT positions in 2013. Specifically, Ms. Martin contends that Ms. Newkirk was biased toward hiring Ms. Davis because Ms. Newkirk sat in on the interviews for the open COT positions in July 2013 and recommended that the FSA Committee promote Ms. Davis.

In her deposition, Ms. Morehead states that Ms. Newkirk sat in for all interviews regarding the open COT positions in 2013 (Dkt. No. 31-2, at 21). Ms. Morehead characterized it as "unusual" for Ms. Newkirk to be present (*Id.*). According to Ms. Morehead, Ms. Newkirk spoke "on behalf of Rebecca Davis" and talked about Ms. Davis' "experience and how she would be a good COT." (*Id.*). Ms. Morehead testified the process caused her concern (*Id.*, at 26). When asked later, however, Ms. Morehead acknowledged the importance of experience and testified that "within the federal system in some positions, you can have experience that will count as much as education or that can be substituted for education." (*Id.*, at 27).

In her own deposition, Ms. Newkirk states that she did not speak on behalf of Ms. Davis to the FSA Committee (Dkt. No. 25-2, at 7).

 "It is true that 'evidence of preselection and arbitrary manipulation of job requirements to benefit the pre-selected applicant may act to discredit the defendant's proffered explanation.'" *Nelson v. USAble Mut. Ins. Co.*, 918 F.3d 990, 994 (8th Cir. 2019) (quoting *Tyler*, 628 F.3d at 988). "The argument that a supervisor may have preselected an employee for a promotion 'is not sufficient evidence for jurors reasonably to conclude' that the [FSA's] explanation for hiring [Ms. Choate and Ms. Davis] was prextext." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005) (quoting *Mackey v. Shalala*, 360 F.3d 463, 468–69 (4th Cir. 2004)). "[W]hile preselection may establish that an employee was 'unfairly treated, it does not by itself prove racial discrimination.'" *Id.* (quoting *Blue v. U.S. Dep't of the Army*, 914 F.2d 525, 541 (4th Cir. 1990)).

Here, there is a dispute in the record regarding Ms. Newkirk's purportedly expressed preference that the FSA Committee promote Ms. Davis. However, viewing all record evidence in the light most favorable to Ms. Martin, as the Court is required to do, the record evidence does not establish a genuine issue of material fact as to whether the USDA's failure to promote Ms. Martin was pretextual and instead based on race discrimination, even if Ms. Newkirk allegedly preselected Ms. Davis. Assuming that Ms. Newkirk recommended that the FSA Committee promote Ms. Davis, that fact, by itself, does not prove that the FSA Committee's decision not to promote Ms. Martin was pretextual and instead based on race discrimination.

The record evidence demonstrates that, prior to Ms. Newkirk making alleged comments to the FSA Committee, Ms. Morehead spoke to the FSA Committee about the need for diversity in selecting applicants, especially applicants for the COT program (Dkt. No. 31-2, at 23). According

to Ms. Morehead, the alleged comments Ms. Newkirk made focused on Ms. Davis' experience (*Id.*, at 25–26), which experience is supported by record evidence. Further, only the FSA Committee, not Ms. Newkirk or Ms. Morehead, voted and made the final decision to promote Ms. Choate and Ms. Davis over Ms. Martin. There is no evidence in the record that the FSA Committee was required to promote Ms. Davis because Ms. Newkirk spoke on her behalf.

Moreover, Ms. Choate and Ms. Davis received the two highest scores after the interview process, not Ms. Martin. The interviewers had not reviewed written applications prior to conducting and scoring the interviews; another panel had scored the written applications. Ms. Morehead testified that the interview scores and the application scores were used as composite for the final scores (*Id.*, at 25).

Ms. Martin also does not argue that the USDA manipulated the job requirements to benefit Ms. Davis. As the Court discussed above, Ms. Martin, Ms. Choate, and Ms. Davis all met the minimum qualifications for the COT positions and were recommended to interview for the positions, and the FSA Committee rated Ms. Choate and Ms. Davis as the top two applicants after the interviews, with Ms. Martin ranking third. Construing the record evidence in the light most favorable to Ms. Martin, the Court finds that Ms. Martin has failed to show pretext and race discrimination with regard to her failure-to-promote claim, even if Ms. Newkirk allegedly preselected Ms. Davis for one of the COT positions.

### *iv.* **History Of Discrimination**

Ms. Martin also offers as evidence of pretext that the USDA in Arkansas has a history of discrimination. Ms. Martin argues that the USDA "has a dismal record when it comes to diversity." (Dkt. No. 31, at 20). Specifically, Ms. Martin asserts that, of the 21 COT and CED positions that have been filled since 2009, only one has been filled by an African-American (*Id.*,

at 21).  Ms. Martin also argues that there are at least two examples of African-American applicants for open CED positions who were passed over for less-qualified Caucasian applicants (*Id.*, at 20–21).  Ms. Martin presents statistical data regarding employment and promotions with the FSA in Arkansas in response to interrogatories:  the total number of employees who were employed by the FSA in Arkansas on December 31, 2013, divided by race; statistics on employees who were promoted to a COT position between 2009 and 2017, including their race, the FSA Committee members who made the selection, and the FSA Committee members' race; and statistics on employees who were promoted to either a COT or CED position between 2009 and 2017, including their race, the names of the other applicants for the position, and the race of the other applicants (Dkt. No. 31-3, at 1–4).

"[T]he obligation imposed by Title VII is to provide an equal opportunity for *each* applicant . . . without regard to whether members of the applicant's race [or age group] are . . . proportionally represented."  *Bell v. Bolger*, 708 F.2d 1312, 1318 (8th Cir. 1983) (alterations in original) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 579 (1978)).  Statistics can be useful in determining whether a proffered reason is pretextual but must evaluate the treatment of comparable employees to be meaningful indicators of pretext.  *See Schultz v. McDonnel Douglas Corp.*, 105 F.3d 1258, 1259 (8th Cir. 1997); *Roxas*, 90 F.3d at 316–17.  "When different decision-makers are involved, two decisions are rarely similarly situated in all relevant aspects."  *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 718 (8th Cir. 2012) (quoting *Stanback v. Best Diversified Prods. Inc.*, 180 F.3d 903, 910 (8th Cir. 1999)).  Accordingly, courts have found that company or industry-wide statistics are usually not helpful in showing pretext because those who make employment decisions vary.  *See Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 792 (8th

Cir. 1997); *Axtell v. Nw. Airlines, Inc.*, No. CIV.972632 ADM/AJB, 1999 WL 33912056, at *7 (D. Minn. June 30, 1999).

Ms. Martin's statistical data on the USDA's agency-wide employment figures is insufficient to establish pretext (Dkt. No. 31-3, at 1). The statistical data on the racial composition of the total number of employees who were employed by the FSA in Arkansas on December 31, 2013, does not evaluate the treatment of employees comparable to Ms. Martin, as it is not related to the agency's employment practices and, therefore, is not a meaningful indicator of pretext. *See Schultz*, 105 F.3d at 1259; *Roxas*, 90 F.3d 316–17. Ms. Martin also presents statistical data on employment figures for COT and CED positions during Ms. Newkirk's tenure as State Executive Director (Dkt. No. 31-3, at 3–4). The statistical data relating to the hiring of applicants for open CED positions also does not aid Ms. Martin in establishing pretext because, as the explanation of the data itself says, the COT positions are selected by the FSA State Committee, while the CED positions are selected by the "local County Committee." (*Id.*); *see also Carman*, 114 F.3d at 792; *Axtell*, 1999 WL 33912056, at *7. In other words, there is no record evidence that the decision-makers for these selections, and for the selection Ms. Martin now complains about, were all the same or that these decisions were similarly situated in all relevant respects.

Ms. Martin has produced statistical data regarding employment figures for COT positions while Ms. Newkirk was the State Executive Director, between 2009 and 2017 (Dkt. No. 31-3, at 2–4). This data includes the names of people who applied for the open COT positions, the applicants' race, the person who was promoted for each position, and the members of the FSA Committee who interviewed and promoted the applicants, as well as their race (*Id.*). This data shows that six applicants have been promoted to COT positions between 2009 and 2017, and all

six of those employees are Caucasian (*Id.*).[2]  According to the data, the same FSA Committee members who interviewed Ms. Martin for the open COT positions in 2013 also interviewed and selected the other COT applicants during the relevant time period, with the exception of the COT promotions in 2011 where Mr. Simmons was not a part of the decision-making process (*Id.*).  The data also shows that Ms. Martin was the only African-American applicant for the COT positions during this time period; all other applicants were Caucasian (*Id.*).  Ms. Martin applied for open COT positions on three different occasions during this time period, for a total of five different open COT positions (Dkt. Nos. 30, at 3; 31-3, at 2–4).

Based on the evidence presented by Ms. Martin, and construing all record evidence in her favor, the Court finds that Ms. Martin has failed to show pretext based on a history of discrimination by the USDA in Arkansas.  The statistical data regarding total employment figures and the CED position promotions does not aid Ms. Martin in establishing pretext for the reasons explained.  Further, regarding the COT promotions data between 2009 and 2017, the data shows that Ms. Martin was not promoted despite applying for open COT positions on three different occasions, but it also shows that Ms. Martin was the only African-American to apply for the COT positions during this time period.  The fact that Ms. Martin applied for the same position three different times and was passed over in favor of Caucasian applicants does not show that the FSA Committee's decision to promote Ms. Choate and Ms. Davis in 2013 was pretextual and instead motivated by race discrimination.  Because Ms. Martin was provided with an equal opportunity in applying for the open COT positions in 2013, the USDA has met its Title VII obligation to Ms.

---

[2]  The data presented by Ms. Martin includes the promotion of Ms. Choate in August 2013, but it does not include the promotion of Ms. Davis (Dkt. No. 31-3, at 2–4).

Martin; statistical data that purports to show an agency-wide deficiency in the proportional representation and treatment of minorities does not change that. *See Bell*, 708 F.2d at 1318.

Viewing the evidence in the light most favorable to Ms. Martin, she has failed to show a genuine issue of material fact in dispute regarding her contention that the USDA's decision not to promote her was pretext for racial discrimination. For all of these reasons, the Court grants summary judgment in favor of Secretary Perdue with respect to Ms. Martin's failure-to-promote claim under Title VII.

### 2. Retaliation

Ms. Martin also claims retaliation under Title VII. Specifically, Ms. Martin alleges in her complaint that, when the USDA failed to promote her to the COT position in July 2013, the USDA was acting in retaliation for Ms. Martin having previously filed grievances with the FSA based on a failure to interview her for previous promotions in 2007 and 2011 (Dkt. No. 31, at 23). In her response to the motion for summary judgment, Ms. Martin argues that there were two additional instances where the USDA failed to promote her to an open COT position, which both occurred after the 2013 incident at issue in this case (*Id.*, at 22). Specifically, Ms. Martin argues that on April 17, 2016, Reba Eakley, a Caucasian female, was promoted to an open COT position over her, even though Ms. Eakley only held an associate degree (*Id.*, at 22, 26). Ms. Martin further asserts that Jefferson Blake and Kaci Kizer, both Caucasian males, were promoted over her for open COT positions in 2017 (*Id.*, at 22).

Under Title VII, an employer is prohibited from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "The two

clauses of this section typically are described, respectively, as the opposition clause and the participation clause." *Brannum v. Mo. Dep't of Corr.*, 518 F.3d 542, 547 (8th Cir. 2008) (quoting *Barker v. Mo. Dep't of Corr.*, 513 F.3d 831, 834 (8th Cir. 2008)).

### a. Administrative Exhaustion

In her response to the motion for summary judgment, for the first time, Ms. Martin argues that she has additional evidence of retaliation regarding two additional failure-to-promote claims from 2016 and 2017. Ms. Martin alleges that Ms. Eakley, a Caucasian female, was promoted to an open COT position instead of her on April 17, 2016 (Dkt. No. 31, at 22, 26). Ms. Martin also alleges that Mr. Blake and Mr. Kizer, both Caucasian males, were promoted to open COT positions instead of her in 2017 (*Id.*, at 22). Ms. Martin did not attach to her filings any EEO administrative claims relating to these incidents and does not state whether she filed an EEO claim relating to the alleged 2016 or 2017 failure-to-promote claims. Secretary Perdue argues that the alleged events from 2016 and 2017 cannot be used as proof of retaliation in 2013 because each retaliatory employment decision constitutes a separate actionable employment practice and that these later events are not before the Court as a part of this lawsuit (Dkt. No. 32, at 6–7).

Generally, because each incident of discrimination or retaliation is a "discrete act," an employee must exhaust the administrative process for each discrete act for which he or she seeks to bring a claim. *Wedow v. City of Kansas City*, 442 F.3d 661, 673 (8th Cir. 2006) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002)). The Eighth Circuit has determined that, where alleged discriminatory or retaliatory conduct has occurred after an EEO charge has been filed, "[a] plaintiff will be deemed to have exhausted administrative remedies if the allegations of the judicial complaint are *like or reasonably related to* the administrative charges that were timely brought." *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986) (emphasis added).

The Court does "'not require that subsequently-filed lawsuits mirror the administrative charges' as long as 'the sweep of any subsequent judicial complaint' is no broader than 'the scope of the EEOC investigation which could reasonably be expected to grow out of the charge' filed in the EEOC complaint." *Wedow*, 442 F.3d at 674 (quoting *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004)). The plaintiff's allegations must be sufficient to put the employer on notice of the conduct complained of and the general basis of the claim. *Fair v. Norris*, 480 F.3d 865, 866 n.2 (8th Cir. 2007). "Permitting claims to be brought in court which are outside the scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge." *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006).

The "like or reasonably related" standard has been narrowed based largely on the reasoning of the Supreme Court in *National Railroad Passenger Corp. v. Morgan*, in which the Court determined that a discrete act of discrimination constitutes a separate actionable employment practice and starts a new clock for filing charges based on it. 536 U.S. at 113–14; *see also Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 852 (8th Cir. 2012). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114. Only discrete acts that occurred between 180 days prior to the filing of the Charge and the day Ms. Martin filed the Charge are actionable. *See id.*

Ms. Martin alleges that she was subject to additional, discrete acts of discrimination based on a failure to promote in 2016 and 2017. Because her alleged failure-to-promote claims from 2016 and 2017 did not occur during the 180-day period before Ms. Martin filed the EEO

administrative claim in this case in 2013, Ms. Martin's claims regarding alleged conduct in 2016 and 2017 are not actionable in this case (Dkt. No. 3-1, at 1). Further, there is no evidence in the record showing that Ms. Martin filed separate EEO administrative claims regarding the alleged 2016 and 2017 incidents. Her claims from 2016 and 2017 are outside the scope of the EEO claim at issue in this case for purposes of evaluating Ms. Martin's retaliation claim currently before the Court.

### b. *Prima Facie* Case

To establish a *prima facie* case of retaliation under Title VII, Ms. Martin must show: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection existed between the protected activity and the adverse action. *See Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 955 (8th Cir. 2011) (citing *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005)). "Retaliation must be the 'but for' cause of the adverse employment action." *Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016) (alteration omitted) (quoting *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs*., 728 F.3d 800, 804 (8th Cir. 2013)). "It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Id.* (citation and internal quotation marks omitted). If Ms. Martin establishes a *prima facie* case of retaliation, the Court applies the *McDonnell Douglas* framework. *See Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015).

In terms of statutorily protected activity, Ms. Martin filed her first EEO administrative claim on July 19, 2007, based on discrimination (Dkt. Nos. 3, ¶ 11; 25, ¶ 33). Ms. Martin filed that EEO claim before Ms. Newkirk became State Executive Director in 2009 (Dkt. No. 25, ¶ 33). Ms. Martin filed a second EEO administrative claim on December 22, 2011, for discrimination based on a determination that she was not qualified for an interview for a Farm Loan Officer

position earlier that year (*Id.*, ¶ 35).  In that EEO claim, Ms. Martin alleged that Ms. Newkirk, who was the State Executive Director at that time, was the discriminating official, but Ms. Newkirk was not Ms. Martin's supervisor (*Id.*, ¶ 34).  The EEO claims from 2007 and 2011 are not in the record before the Court, but Secretary Perdue does not dispute the authenticity of the EEO claims.  For purposes of the first prong of the *prima facie* case of retaliation, Ms. Martin has shown that she engaged in statutorily protected activity by filing the EEO claims in 2007 and 2011.  Ms. Martin has also shown the second prong of the *prima facie* case because she was not promoted to one of the two open COT positions in 2013.

Ms. Martin, on the record evidence before the Court, fails to establish a genuine issue of material fact in dispute regarding the third prong–the causal connection between the EEO administrative claims filed by Ms. Martin and the fact that Ms. Martin was not promoted to an open COT position in 2013.

To establish the third element of the *prima facie* case of retaliation, Ms. Martin must demonstrate that a causal connection existed between the protected activity and the adverse action.  Generally, "more than a temporal connection is required to present a genuine factual issue on retaliation."  *Peterson v. Scott Cty.*, 406 F.3d 515, 524 (8th Cir. 2005) (citing *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc)).  As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternate evidence of causation.  *Sims v. Sauer–Sundstrand Co.*, 130 F.3d 341, 343 (8th Cir. 1997).  The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months.  *See*, *e.g.*, *Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 645 (8th Cir. 2009) (concluding that a temporal gap of seven months was "not sufficiently contemporaneous" to indicate a causal connection); *Recio v. Creighton Univ.*, 521 F.3d

934, 941 (8th Cir. 2008) (determining that a six-month gap was too long to give rise to an inference of causal connection); *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1138 (8th Cir. 2006) ("We have held that an interval as brief as two months did not show causation for purposes of establishing a retaliation claim and that a two-week interval was 'sufficient, but barely so.'" (citation omitted) (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002))).

Ms. Martin argues that Ms. Newkirk was aware of Ms. Martin's EEO claim from 2011 prior to the interviews for the 2013 COT positions (Dkt. No. 31, at 25). Ms. Martin further asserts that she was not promoted to one of the open COT positions in 2013 because she previously filed EEO claims against the USDA (*Id.*).

Secretary Perdue argues that, even though she can establish the first two prongs of the *prima facie* case of retaliation, Ms. Martin cannot show the causal connection requirement (Dkt. No. 26, at 10–11). Specifically, Secretary Perdue asserts that Ms. Martin's EEO claims are not casually connected to the 2013 COT interviews because the EEO claims were filed more than 18 months before Ms. Martin interviewed in 2013 (*Id.*, at 10). Secretary Perdue further argues that Ms. Martin's 2007 EEO claim was filed before Ms. Newkirk even became the State Executive Director (*Id.*). Secretary Perdue also asserts that Ms. Martin's 2011 EEO claim named Ms. Newkirk, even though Ms. Newkirk was not Ms. Martin's supervisor, and challenged a determination regarding Ms. Martin's lack of qualifications to interview for a Farm Loan Officer position (*Id.*, at 11).

The following facts come from the affidavit completed by Ms. Newkirk on December 5, 2013, in connection with an EEO investigation into Ms. Martin's 2013 claim (Dkt. No. 31-5, at 4–8). According to her affidavit, Ms. Newkirk was involved in a prior EEO claim involving Ms. Martin (*Id.*, at 5). Ms. Newkirk states that she does "not have the specific case numbers" but that

"the issues were the same in the Martin case." (*Id.*). She also maintains that the EEO administrative claim "took place approximately two years ago" and that she does "not know the status of the disposition of that case." (*Id.*). Ms. Newkirk further states that she was not the selecting officer for Ms. Martin's previous EEO claim (*Id.*). According to Ms. Newkirk, the five person FSA Committee made the selection for the COT positions, and not her (*Id.*). Regarding the two previous EEO claims filed by Ms. Martin, Ms. Newkirk was aware of the 2011 claim when it was filed and recalled that the "situation was the same as" the claim from 2007 (*Id.*, at 6). Ms. Newkirk stated that she did not make the promotion selection regarding Ms. Martin in either 2011 or 2013 (*Id.*). Even though Ms. Newkirk did not make the promotion decisions in either 2011 or 2013, she stated that she did not "believe [Ms. Martin's] prior EEO Activity was a factor" in the interviews for the 2013 COT positions (*Id.*, at 7).

The first EEO claim was filed in 2007, before Ms. Newkirk was involved with the hiring process, and was not filed against Ms. Newkirk. In addition, that charge was filed over four years before Ms. Martin applied for the COT position in 2013. The second EEO claim was filed against Ms. Newkirk, but Ms. Martin filed that claim in December 2011. Over a year passed between the time that Ms. Martin filed her second EEO claim and when she applied for the COT position in 2013. Because the inference of retaliation becomes weaker and requires stronger alternate evidence of causation when the time gap is measured in months, Ms. Martin must produce additional evidence of retaliation because both EEO claims were filed more than a year before she applied for the open position. *See Sims*, 130 F.3d at 343. Even though Ms. Newkirk was aware of Ms. Martin's 2011 EEO claim during the interview process in 2013 (Dkt. No. 31-5, at 6), Ms. Martin presents no additional evidence that shows her filing of two EEO claims more than a year

before applying to the 2013 COT position was the but-for reason that the USDA did not select Ms. Martin for the 2013 position.

Even if Ms. Martin could establish a *prima facie* case of retaliation, the USDA presents record evidence of legitimate, nondisriminatory reasons for its decision not to promote Ms. Martin for the open COT position in July 2013; specifically, both Ms. Choate and Ms. Davis received higher interview scores than Ms. Martin. Further, Ms. Martin has not presented sufficient record evidence to demonstrate that these proffered reasons were pretext and that retaliation was the but-for reason that she was not promoted to the COT position. For all of these reasons, the Court grants summary judgment in favor of Secretary Perdue with respect to Ms. Martin's retaliation claim under Title VII.

## IV.     42 U.S.C. § 1981 Claim

Ms. Martin also brings a claim for employment discrimination pursuant to 42 U.S.C. § 1981 (Dkt. No. 3, ¶ 1). As a federal employee, Mr. Martin's sole recourse for alleged discrimination against the USDA is relief granted by Title VII. In *Brown v. General Services Administration*, the United States Supreme Court concluded that Title VII provides the "exclusive judicial remedy for claims of discrimination in federal employment." 425 U.S. 820, 835 (1976). In its analysis, the Supreme Court noted that Congress unambiguously intended to create "an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination" when it enacted section 717 of the Civil Rights Act. *Id.* at 829. Consequently, *Brown* has come to stand for the proposition, and the Eighth Circuit has repeatedly affirmed the *Brown* holding, that, when applicable, Title VII bars § 1981 and other, similar claims for federal employees. When a federal employee plaintiff alleges facts that are actionable under Title VII and for which Title VII provides a remedy, Title VII preempts virtually all other causes of action that

provide consistent theories of relief, including § 1981 claims. *See, e.g.*, *Mathis v. Henderson*, 243 F.3d 446, 449 (8th Cir. 2001) (stating that 42 U.S.C. § 2000e-16 "effectively waives sovereign immunity of the United States for Title VII claims" and "provides the exclusive judicial remedy for claims of discrimination in federal employment" (second quote quoting *Brown*, 425 U.S. at 835)); *see also Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 570 (8th Cir. 2000) (affirming the district court's dismissal of 42 U.S.C. § 1985(3) claims, which the district court concluded were brought to redress violations of Title VII); *Walton v. U.S. Dep't of Agric.*, No. 4:02CV00163 AGF, 2007 WL 1246845, at *11 (E.D. Mo. Apr. 30, 2007); *Giles v. EEOC*, 520 F. Supp. 1198, 1200 (E.D. Mo. 1981);

Ms. Martin alleges that her employment discrimination claims against the government asserted pursuant to § 1981 are proper. Ms. Martin cites to *Kim v. Nash Finch Co.* in support of her claims pursuant to § 1981. 123 F.3d 1046, 1056 (8th Cir. 1997). However, in that case, plaintiff sued his private employer, not a federal employer. For this reason, the *Kim* decision is not applicable to the present case; Ms. Martin is a federal employee suing Secretary Perdue and the USDA. Because Ms. Martin is a federal employee alleging claims of employment discrimination and retaliation, her claims of discrimination under § 1981 are dismissed because Title VII provides the exclusive remedy.

## V. Conclusion

For the foregoing reasons, the Court grants Secretary Perdue's motion for summary judgment (Dkt. No. 24). The Court dismisses with prejudice Ms. Martin's claims.

It is so ordered this 19th day of March, 2020.

Kristine G. Baker
United States District Judge